IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM B. MOSKALSKI | ) |
| | ) No. 2:06-cv-568 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BAYER CORPORATION, et al., | ) |
| | ) |
| Defendants. | |

**OPINION AND ORDER OF COURT**

**SYNOPSIS**

In this civil action, Plaintiff claims that Defendants denied him disability

benefits in violation of the Employee Retirement income Security Act ("ERISA"), 29

U.S.C. § 1001 et seq.   He claims that Defendants' conduct violated the terms of an

ERISA disability plan (the "Plan"), pursuant to ERISA § 502(a)(1)(B), and that

Defendants breached fiduciary duties to him under the Plan, pursuant to §§

404(a)(1)(A), 409, and 502(a)(3).[1]   Plaintiff initially complained of a November 10,

2005 decision by a Review Committee to uphold the termination of benefits.

That matter was settled, at mediation, with an agreement that Plaintiff would be

permitted to augment the administrative record, and that Defendants would

review de novo Plaintiff's claims and all supporting documentation.   Following

that settlement, Defendants again denied Plaintiff's claim for disability.   This case

_____

[1]Defendants are the Plan itself, the Plan administrator, and the Review Committee.
Defendants refer to themselves collectively.  I do likewise, therefore, except as necessary.

was then reopened by Court Order.

Now before the Court are the parties' cross-motions for summary judgment. Plaintiff moves for judgment on Count I of his Complaint; Defendants move for summary judgment on all claims against them. For the following reasons, Plaintiff's Motion will be granted, and Defendants' denied. This matter will be remanded for further proceedings consistent with this Opinion.

## I. Factual Summary

The material facts are not in dispute. By way of background, I include several facts that are not material to my decision. The Plan is a plan within the meaning of ERISA, and includes the long term disability ("LTD") plan under which Plaintiff received disability benefits; Plaintiff was an employee of Bayer, and a participant in the Plan. The Plan Sponsor and Administrator of the Plan is Bayer Corporate and Business Services ("Bayer"); the Claims Administrator is Broadspire National Services ("Broadspire"), a successor of Kemper National Services ("Kemper"). LTD benefits are paid from a trust funded by employee payroll deductions, and periodic contributions from Bayer, and the Trust also earns investment income. The Plan gives the Plan Administrator discretion to make final determinations as to any facts necessary or appropriate for any purpose under the Plan, to interpret the terms and provisions of the Plan, and to determine any and all questions arising under the Plan. The initial decision to grant or deny a claim for benefits is made by Broadspire. Broadspire is not affiliated with Bayer; no part of its compensation is based on or affected by its

decisions on benefits applications, and it is not financially responsible for any claim payments to participants. Reviews on appeal from a denial by Broadspire are done by Bayer's ERISA Review Committee, which has been delegated the discretionary authority of the Plan Administrator to interpret the Plan and make determinations of disability. Members of the ERISA Review Committee are Bayer employees, who receive no compensation for service on the Committee and have no financial incentives based on their decisions or Committee performance. After a participant has been awarded LTD benefits, the Plan gives the Plan Administrator the right to require satisfactory medical proof of continuing disability. A participant has the burden to prove, through periodically submitted medical evidence, that he is disabled.

Plaintiff went on disability on March 20, 1997, and began receiving LTD after his short-term benefits expired. Plaintiff's disability was severe obsessive compulsive disorder ("OCD"). The earliest attending physician statements in the administrative file were completed in July 2001 by Dr. Goldstein, Plaintiff's psychiatrist, and Dr. Taylor, Plaintiff's psychologist. Dr. Taylor reported that Plaintiff suffered from depression, as well as OCD, and reported that Plaintiff's OCD dated from age thirteen. Plaintiff was awarded Social Security Disability Income benefits on June 18, 1999, based on a finding of disability as of March 23, 1997, with a benefit start date of March 1998.

On April 11, 2005, at the request of Broadspire, Dr. Glassman, a psychiatrist, performed a peer review of Plaintiff's medical records as submitted to the

administrator.  He was asked to do the review because Plaintiff's condition was reportedly stable for over a year, with the last inpatient treatment having been reported in January, 2004. Dr. Glassman concluded that the documentation no longer provided examination data that would support a functional impairment from February 10, 2005, going forward.  He also concluded that Plaintiff was "not disabled from any occupation."  Dr. Glassman also advised that "an IME would be appropriate to gather more information at this time."  Dr. Glassman had performed a peer review analysis on Plaintiff's file in September, 2001 at the request of Kemper, the prior claims administrator, and concluded at the time that the record supported a finding of disability.

On May 26, 2005, as a result of Dr. Glassman's review, Plaintiff was asked to submit to an IME.  The IME was scheduled for June 10, 2005, and Plaintiff did not appear at the IME.  Three months later, he advised that he had not opened his mail in time.  In June, 2005, Broadspire notified Plaintiff of his obligation to provide information to support continuing disability, and of its conclusion that the medical data that had been submitted, i.e., progress notes of Dr. Goldstein from 2001 to January 20, 2005, did not reflect continued disability from any occupation.  Plaintiff was informed that if he disagreed with this conclusion, he should submit any additional supporting medical documentation.  He was given thirty days to submit the information after June 14, 2005, and told that his benefits could be terminated.  No information was submitted on Plaintiff's behalf.

On July 18, 2005, Broadspire notified Plaintiff that his LTD benefits would be terminated effective August 1, 2005, because his medical documentation did not support continued disability.  He was informed of his right to appeal the decision to the Plan Administrator.   Plaintiff appealed the termination of benefits in an undated letter received by the ERISA Review Committee on September 12, 2005. In his letter of appeal, Plaintiff disputed several of Defendants' statements in the July 18 letter.   Dr. Goldstein submitted a letter dated September 27, 2005, in which she stated that Plaintiff "needs continuing psychiatric care and he is unable to work."  Her letter enclosed a handwritten history and office visit notes, almost all of which were already in the Administrative File.  On October 3, 2005, Dr. Mendelssohn completed a Peer Review of the complete file, including Dr. Goldstein's letter, and concluded that the information submitted by Plaintiff and his psychiatrist did not support a functional impairment.   On October 18, 2005, Dr. Goldstein submitted another letter to the Committee, stating that she had seen Plaintiff on October 17, 2005, and observed a "significant deterioration of his mental status."  She attributed the deterioration to the cessation of disability payments.  She also opined that "the improvement observed in [her notes following Plaintiff's hospitalization in 3-4/04] reflects mainly the change compared to his severely ill pre-hospitalization status.  While he did make progress he never reached functionality that could allow him to return to work."

At the request of the ERISA Review Committee, an outside agency, Managed Care Network, selected a Board Certified Psychiatrist, Dr. Burstein, to

perform a review of the complete medical file and provide the Committee with another opinion as to whether Plaintiff's medical records in the file demonsrtated that Plaintiff was unable to work.  Dr. Burstein reviewed the claim history and the medical documentation in the file.  By letter dated October 24, 2005, he concluded that Plaintiff "shows no signs of psychopathology that would interfere with his resuming his former duties as a Biochemist for Bayer Diagnostics or his assuming the duties and responsibilities of any job for which he could become qualified by education, training or experience."   Dr. Burstein reported that Plaintiff was intelligent, with a variety of interests, and was able to negotiate purchases and drive successfully in a congested geographic area.   Dr. Burstein also recounted certain of Plaintiff's activities of daily living and hobbies.

Moreover, Dr. Burstein took note of several items contained in Dr. Goldstein's office notes.  For example, in January, 2005, Plaintiff appeared to be the best he had been in a long time; in October of 2004, he reported being "more accepting of things."   In September, 2005, she noted "Narcissistic/grandiose issues.  Wants to think about fundamental issues."  On October 17, 2005, she noted "fighting to push himself to function at home" and later that month, noted "Discussion of OCD [symptoms] reveals still very deep and pervasive [symptoms]."

Subsequently, by letter dated November 10, 2005, the ERISA Review Committee informed the Plaintiff that his appeal was denied.  It based its denial on the opinion and reasoning of Dr. Burstein, after having reviewed the several

conflicting medical opinions in the file. Plaintiff then commenced suit on May 1, 2006. By agreement of the parties, the case was essentially remanded to the Plan Administrator to permit Plaintiff to submit additional medical documentation in support of his claim of disability as of August 1, 2005.[2]

After the remand, Dr. Goldstein submitted a letter dated November 17, 2006, in which she stated that Plaintiff has "extensive contamination obsessions, aggressive obsessions, hoarding, need for symmetry, cleaning compulsions, ordering/arranging compulsions and pathological slowness. The symptoms are somewhat attenuated by his numerous avoidances and rituals but on the whole his functional capacity is very limited." This letter was accompanied by a set of office notes covering 2001 through October 2006. The notes up through 2005 were already part of the file that had been reviewed before. Dr. Goldstein's letter also observes that Plaintiff's condition is chronic, disabling, and has not responded to medication; she observes that the disease has a "natural history of waxing and waning."

In a February 5, 2006 letter, Dr. Burstein evaluated the additional records and information submitted after remand. He advised that the updated records did not alter the opinion expressed in his report dated October 24, 2005. He stated that Plaintiff "continues to give a clear accounting for his purported worries and claimed incapacities. In so doing he demonstrates executive function

[2]The settlement agreement referred to Plaintiff's disability as of August 1, 2005, which was the date of the original termination based on Plaintiff's failure to respond. The parties, however, both considered, and now refer to, a record relating to Plaintiff's condition after that date. Accordingly, I do likewise.

and working memory as well as clear communication."

On March 6, 2007, the ERISA Review Committee notified Plaintiff's counsel that the Plaintiff's submissions still did not establish disability entitling him to LTD benefits under the Plan, and of its reasons for that decision.

Bayer's LTD plan provides income and other benefits to employees who are disabled for more than 26 weeks.  After six months on LTD, a participant must be "totally disabled," which is defined as "unable to work at any job for which you are or could become qualified by education, training ,or experience."  The Plan further states that "[y]ou may not be considered totally or partially disabled under this plan when your medical condition allows you to earn a wage comparable to your earnings before you became disabled," and that a comparable wage would generally be considered 70% or higher of pre-disability earnings.

## II. Standards of Review

### A. Summary Judgment

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion.  International Raw Materials, Ltd. v. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party bears the

burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

### B. ERISA

In a case such as this, in which the parties agree to the fiduciary's discretionary authority, an arbitrary and capricious standard of review applies. "Under the arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of law [and] the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."[3] Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000). Although the arbitrary and capricious standard is extremely deferential, "[i]t is not...without some teeth. Deferential review is not no review, and deference need not be abject." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003). The burden is on Plaintiff to demonstrate that the denial of benefits was arbitrary and capricious. Stout v. Bethlehem Steel Corp., 957 F. Supp. 673, 691 (E. D. Pa. 1997).

---

[3]"Substantial" means significant or appreciable. Wordperfect X3 Disctionary. It requires more than a "mere scintilla" of evidence. Forchic v. Lippincott, Jacobs & Gruder,NO. 98-5423, 1999 U.S. Dist. LEXIS 21419, at *31 (D.N.J. Nov. 29, 1999).

The arbitrary and capricious standard, however, must be analyzed pursuant to a sliding scale.

> The level of scrutiny should be more penetrating when there is greater suspicion of partiality and less penetrating the smaller that suspicion....

Porter v. Broadspire, 492 F. Supp. 2d 480, 485 (W.D. Pa. 2007) (citations omitted). Plaintiff bears the burden of showing that a heightened standard of review is warranted in a particular case. Schlegel v. Life Ins. Co. of N. Am., 269 F. Supp. 2d 612, 617 (E.D. Pa. 2003).

"[T]he sliding scale approach requires the consideration of both structural and procedural factors. The structural inquiry focuses on financial incentives to deny claims while the procedural inquiry focuses on how the administrator treated the particular claimant." Tylwalk v. Prudential Ins. Co., 257 Fed. Appx. 568, 571 (3d Cir. 2007). The locus of the latter inquiry is whether the administrator has given the court reason to doubt its neutrality. Post v. Hartford Ins. Co., 501 F.3d 154 (3d Cir. 2007). "At its best, the sliding scale reduces to making a common-sense decision based on the evidence whether the administrator appropriately exercised its discretion. This theme, rather than getting bogged down in trying to find the perfect point on the sliding scale, should be district courts' touchstone." Id. at 162.

"Procedural anomalies that may indicate a higher arbitrary and capricious standard of review include: '...conducting self-serving paper reviews of medical files, relying on favorable parts while discarding unfavorable parts in a medical

report, [and] denying benefits based on inadequate information and lax investigatory procedures....' Porter, 492 F. Supp. 2d at 485.  Selective use of medical reports is a weighty factor in this analysis.  Tylwalk, 257 Fed. Appx. at 572.

In this case, Plaintiff argues, inter alia, that there are procedural irregularities that warrant a higher standard of scrutiny.[4]  I agree, and determine that those irregularities call for a moderately heightened standard of review, at the lower end of the sliding scale.  "If the irregularities are minor, few in number, and not sustained, then they may not counsel for raising the level much at all." Post, 501 F.3d at 165.  The pertinent irregularities, which are discussed more fully infra, are the self-serving, selective use of medical evidence; and the lack of record support for conclusions about Plaintiff's employability, on which the denial of benefits was based.[5]

Even if a heightened standard of review applies, I must first determine whether the challenged decision was arbitrary and capricious under a "pure" formulation of that standard; if it was not, then I must consider whether less deference alters that conclusion.  Tylwalk, 257 Fed. Appx. at 573.

---

[4]There are no significant structural concerns here that call for heightened review.  See Krensavage v. Bayer Corp., No. 06-4302, 2008 U.S. App. LEXIS 1290 (3d Cir. Jan. 22, 2008); Michaux v. Bayer Corp., No. 05-1430, 2006 U.S. Dist. LEXIS 46646 (D.N.J. June 30, 2006).

[5]Although it does not rise to the level of serious irregularity, I note that I am puzzled by Defendants' repeated reference to Plaintiff's initial failure to respond to a request for information, early in the review process.  Plaintiff appealed the "technical" denial of benefits based on that failure, and submitted information in support of his claim.  Plaintiff's initial failure, therefore, was rendered moot by subsequent development of the administrative record.   Plaintiff exercised his appeal rights under the Plan, which permitted him to submit additional materials.  Allowing Defendants to continue to deny him benefits based on the initial failure to respond would render the appeal process utterly meaningless.

> "A "heightened arbitrary and capricious review" standard remains "deferential, but not absolutely deferential" to the decisions of a plan administrator. At the "mild end of the heightened arbitrary and capricious scale, " a Plan administrator is entitled to a "moderate degree of deference."

Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003).

Arbitrary and capricious review, whether "pure" or heightened, is limited to the record before the plan administrator when the challenged decision was made. Tylwalk, 257 Fed. Appx. at 572 (heightened); Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997) (pure). In this case, the initial issues regarding Defendant's decisions prior to this litigation must be deemed superceded by the settlement, which augmented the record. The parties agreed that Defendant would consider Plaintiff's claim against the record as it stood post-settlement, on December 1, 2006, and the Motions submitted by both Plaintiff and Defendant rely on facts developed in connection with post-settlement reconsideration. I will, therefore, consider the entire record before Defendants as of December 1, 2006, as relied on by the Review Committee in their March 6, 2006 decision.[6]

## III. DISCUSSION

### A. Failure to Consider Vocational Evidence

I first assess Plaintiff's contention that Defendants erroneously failed to consider vocational evidence when rendering their decision. In response, Defendants do not dispute that their decision failed to take vocational evidence

---

[6]To the extent that I must consider the November 10, 2005 decision separately, I have done so on the record before the Review Committee at that time, as discussed in the body of the Opinion.

into account. Instead, they point primarily to the principle that Plaintiff bears the burden to submit information supporting disability; Defendants, they argue, have no duty to investigate a claim, or gather more information than that presented by a claimant.[7]

This contention, albeit correct as stated, misapprehends the nature of the relevant inquiry. Based on the Plan's definition of "disability," entitlement to benefits hinges largely on questions surrounding Plaintiff's employability. It may be that Defendants were within their rights to deny benefits based on Plaintiff's failure to meet his burden under the terms of the Plan. Their decision to deny him benefits, however, was not based on shortcomings in the Plaintiff's submissions. Instead, Defendants expressly denied benefits based on the affirmative conclusion that Plaintiff "is not totally disabled" because he is not unable to "perform the essential duties of his regular occupation or any job for which he is or could become qualified by education, training or experience."

Under these circumstances, the lack of vocational evidence in the administrative record does not bear on the adequacy of Defendants' investigation, but instead on whether Defendants' conclusion is, as required by law, supported by evidence. In other words, "[t]he burden of proof...has no effect on the fact that Defendant cannot base its decision on non-existent evidence." Pintar v. Liberty Life Assur. Co., No. 04-cv-00904, 2007 U.S. Dist. LEXIS

---

[7]Defendants also argue that it is unclear whether vocational assessments would have made any difference to the outcome. As neither the weight of evidence nor the correctness of the final decision are at issue here, however, the intended import of Defendants' argument is unclear.

39153, at *21 (D. Colo. May 30, 2007). There is a significant distinction between requiring Defendants to proactively gather medical information about Plaintiff– a burden that the law does not necessarily impose – and requiring them, for example, to consult or refer to a simple description of Plaintiff's regular occupation before determining that Plaintiff can perform the duties of that ocupation.

Recently, my colleague on this Court considered an ERISA plan that defined disability, in part, as "completely unable to perform each and every material duty pertaining to [her] occupation with the employer," or as "completely unable to engage in each and every occupation for which [she was] reasonably qualified by education, training, or experience." Lamanna v. Special Agents Mut. Ben.Ass'n, No. 7-733, 2008 U.S. Dist. LEXIS 17977, at *19 (W.D. Pa. Mar. 6, 2008). The plan denied plaintiff's LTD benefits. The decision was based, in part, on a physician's opinion that plaintiff was able to return to her former employment. Because there was no formal job description in the administrative record, however, and no evidence that the physician knew of the plaintiff's job requirements, the Court opined that the physician's opinion "must be viewed skeptically." Id. at **93-94. Similarly, the plan administrator, without vocational analysis or evidence, determined that the plaintiff was able to work in certain other employment. Id. at **94-95.

Finding the conclusion without foundation in the record, the Court stated as follows:

> While a plan administrator is under no obligation to conduct a 'full-blown vocational evaluation' of a claimant's job, it must make a reasonable inquiry into the types of skills a claimant possesses and whether those skills are transferable to another occupation. * * * Where there was no objective evidence such as a vocational assessment or reasoned medical opinions to support the conclusion that [claimant] could return to work, while medical evidence from her long-term treating physicians indicated total disability, [the plan] had the burden of showing it had a factual basis for its conclusion.

Id. at *95.

In other words, that our Court of Appeals has stopped short of imposing on Plan personnel an investigative duty does not absolve such personnel of the responsibility to ensure that benefits decisions are made with adequate factual support.[8]

In this case, the administrative record is devoid of any suggestion that Defendants considered the requirements of Plaintiff's position, or other potential relevant positions, when reaching the ultimate conclusion about his employability. This shortcoming infects both Defendant's November 10 and March 6 decisions. In those decisions, Defendants accepted the opinions of Dr. Burstein, authored on October 24, 2005 and February 5, 2006, respectively. Dr. Burstein opined, in his October 24 letter, that Plaintiff was able to return to work, for example, because he was able to negotiate purchases and drive in traffic, is intelligent, and has various interests. Contrary medical evidence from Plaintiff's treating psychiatrist indicated total disability. In the absence of any

---

[8]This Opinion is not to be construed as requiring any particular type or form of vocational evidence relating to every LTD claimant, in every case. My conclusions are limited to the particular facts here presented.

demonstrated nexus between driving, purchasing, coin collecting, and the duties of a biochemist at Bayer, I simply cannot find factual support for Defendants' decision regarding Plaintiff's employability.

As regards his February 5, 2007 letter, Dr. Burstein failed to acknowledge Dr. Goldstein's observation that Plaintiff suffers, for example, from "extensive contamination obsessions,"and "cleaning compulsions," ostensibly, inter alia, because Plaintiff demonstrated clear communication and working memory, and because he gave a "clear accounting" of his claimed problems.   For a lay person without the benefit of a job description, one might reasonably assume that employment related to biochemistry and hematology might involve contact with chemicals or biological contaminants; conversely, one might not readily conclude that the Plaintiff's job duties required nothing much more than clear communication or a good memory.  Neither Defendants nor Dr. Burstein reconcile these common-sense questions.    As for Plaintiff's ability to perform other work for which he may become qualified, the record is devoid of factual support such as a vocational assessment, a labor market study, or the like.  Again, the lack of vocational evidence translates to lack of sufficient factual support for Defendants' conclusions about Plaintiff's ability to perform certain work.

Moreover, neither Dr. Burstein nor Defendants addressed the flip  side of the inquiry - i.e.,  Plaintiff's ability to perform other activities that might be essential to his employment, which might presumably be affected by the symptoms recited by Dr. Goldstein.   Without any vocational information, one

16

cannot reasonably synthesize Plaintiff's employability with the record placed before Defendants.   This case aptly illustrates the principle that "[m]edical data, without reasoning, cannot produce a logical judgment about a claimant's work ability." Lamanna, 2008 U.S. Dist. LEXIS 17977, at *95 (quoting Elliott v. Metropolitan Life Ins., No. 05-6633, 2006 U.S. App. LEXIS 28475 (6th Cir. Nov. 15, 2006); cf. Shah v. Broadspire Servs., No. 06-3106, 2007 U.S. Dist. LEXIS 56356, at **19-20 (D.N.J. Aug. 2, 2007).   Dr. Burstein's report leaps, without an iota of evidence to bridge the gap, from fairly mundane observations about Plaintiff – intelligence, interpersonal relationships, daily pursuits, ability to think on his feet – to his ability to work as a biochemist or in other relevant, but unidentified, positions. Defendants, of course, in their unqualified acceptance of that opinion, take the same leap.

The affirmative conclusion that Plaintiff is not disabled within the meaning of the Plan, therefore, is without appreciable support in the record.   The denial letters, and the medical opinions relied on therein, lack even superficial explanation for Defendants' ultimate finding of employability, and consequent non-disability.  That conclusion, therefore, as stated in both the Defendants' November 10 and March 6 letters, is arbitrary and capricious.   Even if the conclusion were to survive a "pure" application of the arbitrary and capricious standard, it would not survive heightened scrutiny, with moderately less deference afforded the Defendants.

### B. Selective Consideration of Evidence

Second, I will address Plaintiff's argument that Defendant failed to properly consider, or consider at all, information provided by Dr. Goldstein, his treating physician. Subsumed in this argument is the contention that Defendants selectively considered medical information.

Of course, under ERISA, the opinion of a treating physician is not accorded any special deference. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). Accordingly, Plan administrators may properly credit one physician's opinion over that of another. Witte v. Connecticut Gen. Life Ins. Co., No. 06-2755, 2007 U.S. Dist. LEXIS 89720, at *16 (D.N.J. Dec. 6, 2007) (citations omitted). If they fail to credit a treating physician's opinion, moreover, they have no "discrete burden of explanation." Black & Decker, 538 U.S. at 834. "Plan administrators may not, however, arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id. at 823-24.

Accordingly, the law is not such that treating physicians' opinions are never entitled to deference over non-treaters; instead, the administrators' assessment should consider, for example, the length of the relationship between the claimant and the physician, and whether any of the physicians in question have relevant specialties. Lamanna, 2008 U.S. Dist. LEXIS 17977, at **71-72 (citing Black & Decker, 538 U.S. at 834). A long-term relationship may be deserving of greater deference. See Glenn v. MetLife, 461 F.3d 660, 674 (6th Cir. Ohio 2006). As a corollary principle, the selective, self-serving use of medical information is

evidence of arbitrary and capricious conduct.  <u>Porter</u>, 492 F. Supp. 2d at 491; <u>see also</u> <u>Petroff v. Verizon N., Inc.</u>, No. 02-318 Erie, 2004 U.S. Dist. LEXIS 8138, at *41 (W.D. Pa. May 4, 2004).

In this case, Defendants relied on a non-treating physician, and somewhat arbitrarily rejected the opinion of Plaintiff's treating physician.   Dr. Burstein apparently picks up on a single reference to narcissism in Dr. Goldstein's notes, and concludes, without further explanation or clinical support, that narcissism is causing Plaintiff to use symptomatic complaints for secondary gain.[9]  It appears that this single stroke permits Dr. Burstein – and consequently, Defendants – to disregard Dr. Goldstein's references to "deep and pervasive" OCD symptoms, and a patient who is "suspicious of everything, gets into an obsessive loop related to everything, "a mood decline" in January of 2006, isolating his living environment, anxiety about his shoes being contaminated outside, suicidal ideation, and an illness that was "still highly active and disabling" in 2006.    Dr. Burstein and Defendants all but ignore the substance of Dr. Goldstein's November 17, 2006 letter, and treat it in highly conclusory fashion, to arrive at the largely unexplained opinion that Plaintiff "functions satisfactorily."   This, despite the fact that the record reflects that Plaintiff's professional relationship with Dr.

_____

[9]Dr. Goldstein's September 12, 2005 notation reads, "Narcissistic/grandiose issues.  Wants to think about fundamental issues."   Dr. Goldstein's office notes do not refer to clinical reasons underlying this notation.   Dr. Burstein, however, rejected Dr. Goldstein's finding that Plaintiff was "unable to work," because she failed to state clinical evidence for that conclusion.   His view of the need for clinical support, therefore, is inconsistent.  I assume that Dr. Burstein's observation regarding Plaintiff's narcissism builds solely on Dr. Goldstein's notation, because Dr. Burstein's report is utterly devoid of other statements relating to narcissism.   I note, too, that Dr. Goldstein's notes reveal no other reference to complaints for secondary gain.

Goldstein dates at least from 2001.

Defendant accepts Dr. Burstein's opinion as more credible because he is "independent," and gives clear reasons for his conclusion. I have already noted the lack of clear expressed reasons for several of Dr. Burstein's conclusions. Moreover, crediting a consultant's opinion merely because he is "independent" would grant excessive influence to the prejudgment that a claimant's treating doctor may be biased towards her patient. Indeed, we must recognize that "both the Plaintiff's treating physicians and the administrator/insurer's reviewing physicians are potentially affected by inherent incentives and biases." Denmark v. Liberty Life Assur. Co., 04-12261, 2005 U.S. Dist. LEXIS 27180, at *34 (D. Mass. Nov. 10, 2005).

Arguably, the selective use of medical opinion survives a very deferential "pure" arbitrary and capricious standard of review, as it was not entirely without basis in the record. It cannot, however, survive the more searching inquiry of a slightly heightened standard. Under the circumstances, Defendant's selective and self-serving use of medical data must be deemed arbitrary and capricious.

### B. Remaining Arguments

Finally, I must reject Plaintiff's remaining arguments that Defendants acted in an arbitrary and capricious manner when they did not contact his treating physician, despite being provided with contact information; and when they made their decision without obtaining an IME. Defendants were under no particular obligation to contact Dr. Goldstein for further information. Review,

and not independent investigation, is a Plan administrator's appropriate role. See Pinto, 214 F.3d at 394 n. 8.   Additionally, an ERISA plan administrator needn't require an IME prior to assessing a claim for benefits.  See, e.g., Cini v. The Paul Revere Life Ins. Co., 50 F. Supp. 2d 419 (E.D. Pa. 1999).

**IV. REMEDY**

Once a court has found an administrator's actions to be arbitrary and capricious, the court may either remand the case to the administrator, or award benefits under the insurance policy. See Kaelin v. Tenet Empl. Ben. Plan, No. 04-2871, 2006 U.S. Dist. LEXIS 57433, at *10 (E.D. Pa. Aug. 16, 2006).  The reviewing court has "considerable discretion" in deciding the appropriate remedy. Id. Remand is suitable when the defendant "fail[ed] to make adequate findings or to explain adequately the grounds of [its] decision," or if the record before the court is incomplete.  Id.

"Arbitrary and capricious" is a standard of review, rather than a determination of substantive liability.  Here, the deficiencies in Defendants' conclusions result from underlying deficiencies in the record, which in turn preclude me from resolving the ultimate issue of Plaintiff's entitlement to benefits.   Moreover, in this context, there is a general preference that eligibility to benefits be determined by the plan, rather than the courts.  Id. at *24. Although I am cognizant that the delay occasioned by this remedy is not ideal, remand is nonetheless the appropriate remedy here.   Of course, the administrative record must be reopened, consistent with this Opinion, for that

purpose.

## IV. CONCLUSION

Upon careful examination of the record, the merits, and the process, I conclude that Defendants' decision to deny Plaintiff benefits was not the product of reasoned, disinterested discretion.  Instead, I find that the Defendants' decision regarding Plaintiff's employability, and consequent lack of disability, is unsupported by substantial evidence.  Similarly, Defendants' selective and largely unexplained rejection of Dr. Goldstein's opinion is arbitrary and capricious.  There is no genuine issue of material fact to preclude the entry of judgment in this case.    On those grounds, I will grant Plaintiff's Motion, and deny that of Defendants.

### ORDER

AND NOW, this 16th day of May, 2008, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Partial Summary Judgment [Docket No. 22] is GRANTED, and Defendants' Motion for Summary Judgment [Docket No. 26] is DENIED.  This matter is remanded to Defendants, for further proceedings consistent with this Opinion.    This clerk shall mark this matter administratively CLOSED forthwith.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Chief District Judge